**ELECTRICITIES OF NORTH CAROLINA, INC., Plaintiff,**

v.

**The SOUTHEASTERN POWER ADMINISTRATION, et al., Defendants.**

No. C–C–85–384–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 30, 1985.

John R. Jolly, Ernie K. Murray, Spruill and Spruill, Rocky Mount, N.C., James N. Horwood, Marc R. Poirier, Patricia E. Stack, Donald Weightman, Spiegel & McDiarmid, Washington, D.C., for plaintiff.

Robert H. Forry, Robert P. Edwards, Jr., Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., Richard A. Vinroot, Robinson, Bradshaw & Hinson, Charlotte, N.C., John P. Scott, Jr., Balch and Bingham, Birmingham, Ala., Ben H. Stone, Eaton, Cottrell, Galloway, Lang & Stone, Gulfport, Miss., for The Southern Co., Georgia Power Co., Alabama Power Co., Gulf Power Co., Mississippi Power Co.

Thomas J. Bolch, Raleigh, N.C., for Southeastern Power Resources Committee.

Lawrence W. Hewitt, Berry, Hogewood, Edwards & Freeman, Charlotte, N.C., Reuben Goldberg, Channing D. Strother, Jr., Goldberg, Fieldman & Letham, Washington, D.C., for Alabama Cities.

L. Clifford Adams, Jr., Heard, Leverett & Adams, Atlanta, Ga., Clifton A. Vince, Bernhardt K. Wruble, Nancy A. Wodka, Verner, Liipfert, Bernhard, McPherson & Hand, Washington, D.C., Dean Gibson, Berry, Hogewood, Edwards & Freeman,

Charlotte, N.C., for Municipal Electric Authority of Ga.

C. Max Vassanelli, Drake Cutini, Attys., Dept. of Justice, Civ. Div., Washington, D.C., Charles R. Brewer, U.S. Atty., Charlotte, N.C., for Federal defendants.

Denver L. Rampey, Southeastern Power Admin., Elberton, Ga., for Southeastern Power Admin.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court upon Defendants' Motion to dismiss or, alternatively, for summary judgment.[1]

## INTRODUCTION

The Plaintiff alleges that the Federal Government Defendants have violated Section 5 of the Flood Control Act of 1944, 16 U.S.C. § 825s, by failing to give preference to its service area members in the sale and other allocation of hydroelectric energy; the procedural provisions of the Department of Energy Organization Act, 42 U.S.C. §§ 7191(b), (c), and (d) and the Administrative Procedure Act, 5 U.S.C. §§ 553(b), (c), and (d), by making specific determinations, sales, and allocations of power in certain contracts without first publishing the proposed rule or order; and the Southeastern Power Administration's Final Georgia-Alabama Power Marketing Policy. The Plaintiff further claims the private Defendants have violated applicable state laws by their alleged intentional interference with prospective business relations.

The Defendants seek dismissal of the case for several reasons: no justiciable case or controversy; improper venue; no violations of the Flood Control Act of 1944, Southeastern Power Administration's Final Power Marketing Policy for the Georgia-Alabama System, the relevant procedural requirements of the Department of Energy Organization Act and the Administrative Procedure Act; and preclusion of the ac-

tion due to *res judicata* or collateral estoppel.

## PARTIES

The many parties to this lawsuit, which were represented at the hearing of October 2, 1985, include:

(1) Plaintiff ElectriCities of North Carolina, Inc. ("ElectriCities") is organized under the laws of the State of North Carolina and it represents the interests of several municipally owned electric systems in North Carolina, sixteen of which are located in the Western District of North Carolina.

(2) Governmental Defendant Southeastern Power Administration ("SEPA") is the federal power marketing authority of the Department of Energy. SEPA is a marketing agency created for the purpose of disposing of excess hydroelectric power produced in the states of West Virginia, Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Tennessee, and Kentucky. SEPA does not produce any power, nor does it own or operate a transmission network. SEPA is governed by the Flood Control Act of 1944.

(3) Governmental Defendant Harry C. Giesinger is being sued in his capacity as Administrator of SEPA.

(4) Governmental Defendant Department of Energy ("Energy") is the governmental branch of which SEPA is a part.

(5) Governmental Defendant John S. Herrington is being sued in his capacity as Secretary of Energy.

(6) Private Defendant The Southern Company ("Southern") is a holding company with its principal place of business in Atlanta, Georgia. Southern owns the common stock of other private Defendants in this case:

---

1. There are numerous other motions outstanding in this case which are unnecessary to con-

sider due to the effect of this Order.

(a) Georgia Power Company ("Georgia Power");

(b) Alabama Power Company ("Alabama Power");

(c) Gulf Power Company ("Gulf Power"); and

(d) Mississippi Power Company ("Mississippi Power").

These private Defendants are electric utilities which operate in Alabama, Georgia, Florida, and Mississippi, respectively.

(7) Defendant Intervenor Municipal Electric Authority of Georgia ("MEAG") is a public corporation in the business of providing electricity to political subdivisions of the State of Georgia. MEAG is composed of 47 participant companies which have established contractual relations with SEPA for the distribution of energy.

(8) Defendant Intervenor Alabama Cities represents certain cities in Alabama which, as preference customers, have interests in the established energy allocation of SEPA.

(9) Defendant Intervenor Southeastern Power Resources Committee ("SPRC") represents several electric cooperative generation, distribution, and transmission systems throughout the states of Virginia, North Carolina, South Carolina, Georgia, Alabama, and Mississippi. The SPRC membership seeks to protect its interests in the established energy allocation of SEPA.

## FACTS

### A. SEPA

The Flood Control Act of 1944, 16 U.S.C. § 825s, requires that SEPA dispose of the power produced "in such manner as to encourage the most widespread use thereof at the lowest possible rates to consumers consistent with sound business principles." The Act further requires that "preference" in the sale of power be given to public bodies and cooperatives, rather than private entities.

SEPA sells hydroelectric power from the United States Army Corps of Engineers reservoir projects in the Southeastern United States. This area is divided into four marketing systems, one of which is the Georgia-Alabama system, at issue in the case at bar. The Georgia-Alabama system covers all or portions of Georgia, Alabama, South Carolina, Mississippi, Florida, and North Carolina. This system is further subdivided into eastern and western divisions, which are divided by the Georgia-South Carolina border of the Savannah River. The contracts which the Plaintiff has challenged pertain to the western division which includes all of Georgia, most of Alabama, and portions of Mississippi, and Florida.[2] Under SEPA's present marketing policy, none of Plaintiff's members is eligible to purchase power allocated to the western division.

SEPA does not own or control any transmission lines; so it depends on others to move the power of its facilities to its customers. SEPA supplies only a small part of the needs of its customers. The power that it sells from the Georgia-Alabama system is "peaking" power, that is, power to meet the peak demands of its customers. By purchasing its power, SEPA's customers are relieved of the need to invest in generation facilities to meet energy demands during peak periods.

### B. SEPA'S MARKETING POLICY

SEPA develops its marketing policies by informal rule making with notice and an opportunity to submit comments. In 1979, SEPA issued a notice of intent to formulate a power marketing policy for the Georgia-Alabama system. In response, Plaintiff proposed that once existing contracts expired, SEPA should allocate equal amounts of power to all interested preference entities, a suggestion which SEPA rejected.

2. The Plaintiff's member cities are eligible to purchase SEPA power only in the eastern division of the Georgia-Alabama system.

SEPA subsequently published notice of its proposed marketing policy for the Georgia-Alabama system, and in January of 1980, held two public comment fora on the proposed policy.

On October 1, 1980, SEPA published a final marketing policy for the allocation of hydroelectric power in the Georgia-Alabama system. 45 Fed.Reg. 65143–44 (Oct. 1, 1980). The policy provided that SEPA's pre-existing customers would continue to receive their existing allocations of power after their contracts expired. Sixteen of the Plaintiff member cities are scheduled to receive some of the eastern division power under this policy in the future.[3] Contracts negotiated by SEPA with western division companies (private Defendants) do not alter the allocation of SEPA power to the eastern division under the 1980 Policy.

## C. PROCEDURAL BACKGROUND

Prior to this action, Plaintiff filed suit against SEPA, and others, challenging the marketing policy on several grounds. Summary judgment was entered against Plaintiff in *ElectriCities of North Carolina, Inc., et al. v. The Southeastern Power Administration, et al.,* Civ. No. 82–888–CIV–5 (E.D.N.C. Oct. 16, 1984), *aff'd,* 774 F.2d 1262 (4th Cir.1985). Specifically, the Fourth Circuit upheld the district court's ruling that the agency decisions challenged by Plaintiff's involved agency expertise and were not subject to judicial review, but, even if they were subject to judicial review, they were rational decisions.

In this action the Plaintiff alleges in its Complaint that the governmental Defendants violated the Flood Control Act of 1944 by failing to give preference to Plaintiff's members in the Georgia-Alabama system. The Complaint further alleges that the government Defendants have violated procedural requirements of the Department of Energy Organization Act and the Administrative Procedure Act by making specific

determinations, sales and allocations of power without providing for adequate notice, opportunity to comment and publication of the final determination. Plaintiff further alleges that SEPA and its Administrator have violated its 1980 Policy by failing to provide preference customers an opportunity ahead of non-preference customers to provide exchange pumping energy as required by the Policy; by failing to keep Plaintiff members apprised of the status of negotiations with Southern; and by not allowing Plaintiff members to consult with and offer advice to SEPA, as required by the Policy. Plaintiff finally claims that private Defendants intentionally, maliciously and unjustifiably interfered with the prospective business relations between SEPA and some or all of Plaintiff's members.

## DISCUSSION

The Court is of the opinion that this suit should be dismissed because Plaintiff does not have the requisite standing to assert its claims. Essentially, Plaintiff's claims can be broken down into four: (1) Defendants' alleged failure to give Plaintiff members preference; (2) Defendants' alleged failure to give preference customers the first opportunity to provide exchange pumping energy and failure to apprise Plaintiff members of SEPA's contract-negotiation status; (3) private Defendants' alleged intentional and malicious interference with Plaintiff's prospective business relations; and (4) Defendants' alleged failure to meet certain procedural requirements.

## A. RELEVANT LAW

■ The federal judicial power is limited to cases and controversies only. U.S. Const. Art. III § 2. The cases and controversies requirement of Art. III involves the doctrine of standing, which has a prudential aspect demanding that the plaintiff show (1) an injury-in-fact, (2) that there is a causal connection between the challenged action and this injury-in-fact, *Duke Power*

---

**3.** The subdivision of the Georgia-Alabama system into eastern and western divisions also re-

sulted from SEPA's 1980 marketing policy.

*Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, at 72–81, 98 S.Ct. 2620, at 2629–2634, 57 L.Ed.2d 595 (1977), and (3) that the injury is capable of redress, *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, at 472, 102 S.Ct. 752, at 758, 70 L.Ed.2d 700 (1982).

## B. ANALYSIS

■ SEPA indicated in its 1980 Policy that the Georgia-Alabama system would consist of two divisions, the Savannah River being the dividing line. The eastern division of that system is the same as it was prior to the 1980 Policy, except for the inclusion of the service area of South Carolina Electric and Gas Company. That Policy has been upheld by the Fourth Circuit Court of Appeals as noted *supra.*

Pursuant to the Policy allocation of power to the western division, SEPA contracted with Southern to transmit western division electricity to preference customers. These contracts also provide that Southern member companies will purchase a decreasing amount of capacity until 1991 when they will not be purchasing any capacity at all.

Plaintiff contends that the temporary decreasing sales are improper because such action fails to give a preference to public bodies. Plaintiff argues that SEPA cannot create two divisions of energy allocation and sell some of its power to non-preference customers in the western division while excluding preference customers in the eastern division. Plaintiff claims that the 1980 Policy was formulated with the expectation that only preference customers would use the power allocated to the respective divisions. Plaintiff also argues that the Policy does not address SEPA's disposition of potential excess power in a division; the power being sold to Southern is in excess of what western division preference customers want or could use.

The 1980 Georgia-Alabama Policy is not subject to review by this Court in light of the Fourth Circuit's ruling on that issue on October 10, 1985. Although SEPA's contracts for the decreasing sales of energy to the non-preference customers of Southern may be questioned, Plaintiff is without proper standing to do so. Even if those contracts were deemed invalid, the unreviewable Policy allocation of power to the western division remains the same and Plaintiff's eastern division members would not stand to benefit anything. Furthermore, on Plaintiff's appeal of the eastern district court's denial of its motion for preliminary injunctive relief, the Fourth Circuit held Plaintiff has no right or entitlement to allocations of SEPA power. *ElectriCities of North Carolina, Inc. v. Southeastern Power Administration,* 758 F.2d 646 (4th Cir.1985); *See also, Greenwood Utilities Commission v. Hodel,* 764 F.2d 1459, 1465 (11th Cir.1985); *City of Santa Clara v. Andrus,* 572 F.2d 660 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978); *City of South Sioux City v. Western Area Power Administration,* No. CV–L–107 (D.Neb. May 20, 1985).

It is also worth noting that SEPA's contracts with Southern are necessary for the transmission of power since SEPA depends upon others for that; and, SEPA is gradually providing its western division preference customers with energy by making its contracts with Southern on a decreasing sales basis, until 1991 when only preference customers will receive energy in the western division. Plaintiff's claim that the power being sold to Southern is excess power is without merit. SEPA's sales of power to the preference customers are gradually increasing. Consequently, the rates that Southern will charge to transmit the power will gradually increase. Even if the western division contracts with Southern were invalidated, the power allocated to the western division would go unchanged; however, the costs of transmitting the SEPA power to the western division preference customers would increase drastically and suddenly, rather than gradually. Such a result is undesirable to both the western preference customers and SEPA.

■ Similarly, the challenged western division contracts, again, part of the 1980

Policy, have not caused Plaintiff's alleged injury, and thus no case or controversy is before this Court. This Court is of the opinion that Plaintiff's alleged injury is a result of SEPA's decisions in the 1980 Policy regarding how much power to allocate to the eastern and western divisions of the Georgia-Alabama system. That decision is committed to agency discretion and is not subject to judicial review. *ElectriCities of North Carolina, et al. v. Southern Power Administration, et al., supra.*

■ The same analysis applies to Plaintiff's claims that Defendants failed to provide preference customers with the first opportunity to provide exchange pumping energy and to apprise Plaintiff members of SEPA's contract-negotiation status. The Plaintiff is again challenging actions of SEPA pertaining to the western division; thus, even if the action were held improper, Plaintiff's members would realize no change in their energy access from SEPA because the 1980 Policy has predetermined that.

■ With respect to Plaintiff's allegation of private Defendants' intentional, malicious, and unjustifiable interference with Plaintiff's prospective business relations, again, the same analysis applies. Plaintiff member cities are in the eastern division of the Georgia-Alabama system and have no prospective business relations concerning SEPA's Policy allocation of energy to the western division. Therefore, the western division private Defendants cannot be said to have interfered with the prospective business relations of Plaintiff because Plaintiff has no prospective business relations in the western division according to the 1980 Policy.

Likewise, Plaintiff does not have standing to challenge the procedures used by SEPA in disposing of its energy in the western division. The Plaintiff argues that SEPA has failed to meet the procedural requirements imposed upon it. It is unnecessary to analyze whether SEPA complied with relevant informal rule-making procedures in dealing with its western division sales and allocations, because, even if such

procedures were deemed improper, energy allocated under the 1980 Policy to the eastern and western divisions would remain unchanged.

## CONCLUSION

As noted before, this Court is of the opinion that Plaintiff's alleged injury more accurately rests in SEPA's decisions in the 1980 Policy to allocate energy between the eastern and western divisions. That Policy involves the types of decisions committed to agency discretion and not subject to judicial review. *ElectriCities of North Carolina et al. v. Southeastern Power Administration, et al., supra.* Consequently, Plaintiff's eastern division members' claims of invalid action in the western division do not meet the requirements of standing of (1) injury-in-fact, (2) causal connection, and (3) injury capable of redress. *Duke Power Co. v. Carolina Environmental Study Group, Inc., supra;* and *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., supra.*

The Court has also considered a letter received on October 23, 1985 submitted by Plaintiff. Plaintiff therein states that the recent Fourth Circuit decision of October 10, 1985 is not applicable to this case as to the issue of SEPA's allocation as between preference and non-preference customers. The Court disagrees for the reasons stated above.

IT IS, THEREFORE, ORDERED that Defendants' Motions to dismiss are hereby GRANTED.